OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Michael Lowe, appeals the decision of the Belmont County Court of Common Pleas that found Lowe guilty of illegal assembly or possession of chemicals for manufacture of drugs in violation of R.C.2925.041(A), a third degree felony, and sentenced him to four years imprisonment, which is more than the minimum and less than the maximum possible prison term for that offense. Lowe raises four issues on appeal.
 {¶ 2} First, Lowe contends that his trial counsel was ineffective for failing to object to certain hearsay testimony. However, the testimony that Lowe refers to was not hearsay testimony according to Evid.R. 801(D)(2)(a) and (e). Thus, counsel could not have been ineffective for failing to object to that testimony for that reason.
 {¶ 3} Second, Lowe claims the trial court abused its discretion by not ordering a mistrial after the State mentioned improper character evidence in its opening statements and introduced that evidence during trial. However, Evid.R. 404(B) and R.C. 2945.59 allow this kind of evidence to be introduced to prove intent. In this case, the evidence to which Lowe refers was introduced to prove that he possessed the chemical with the intention of manufacturing drugs. Thus, the trial court properly allowed this evidence to be introduced.
 {¶ 4} Third, Lowe argues his conviction is against the manifest weight of the evidence. But the greater weight of the evidence supports the jury's conclusion that Lowe knowingly possessed a chemical used to manufacture methamphetamines with the intent to manufacture methamphetamines.
 {¶ 5} Finally, Lowe contends this case should be remanded for resentencing since the trial court imposed a sentence before it discovered that a fact in the pre-sentence investigation report was mistaken. The trial court sentenced Lowe to more than the minimum sentence for a third degree felony. R.C. 2929.14(B) requires that the trial court make certain findings if the offender has not served a prior prison term. The trial court found that Lowe had not served a prior prison term, but failed to make the required findings.
 {¶ 6} For these reasons, Lowe's conviction is affirmed, but the trial court's sentencing entry is reversed and this cause is remanded for resentencing.
 Facts {¶ 7} During the early morning hours of March 4, 2004, the Bridgeport Police Department received an anonymous tip regarding a possible methamphetamines lab at 39 Liapple Street in Bridgeport, Ohio. When two officers arrived at the residence, they apprehended one man trying to flee. They also arrested two women who admitted that they had been smoking methamphetamines and possessed drug paraphernalia.
 {¶ 8} When interviewing the arrested man, he told the officers that he was Kevin Rogers, Jr. According to his statement, Rogers helped Lowe and Rogers' father manufacture methamphetamines at Lowe's home in Bellaire, Ohio. About two weeks prior to March 4th, the three moved a tank of anhydrous ammonia, a chemical used to manufacture methamphetamines, to the basement of 39 Liapple Street. Lowe had stolen the tank of anhydrous ammonia from Coronet Foods, where Lowe and Rogers had previously been employed together. After moving the tank, Lowe and Rogers would make trips between 39 Liapple Street and Lowe's home to transport the anhydrous ammonia they needed to manufacture the methamphetamines.
 {¶ 9} According to Rogers' statement, Lowe was having problems with an ex-boyfriend of his girlfriend. That man threatened to tell the police about Lowe's drug manufacturing operation. Lowe, Rogers, and Rogers' father then moved the rest of the operation to a location at Pipe Creek Street in the vicinity of Bellaire, Ohio, on March 3, 2004. After moving most of the lab, Rogers and Lowe drove to 39 Liapple Street to obtain more anhydrous ammonia.
 {¶ 10} Upon arriving at 39 Liapple Street, Lowe and Rogers smoked methamphetamines with the women living at the home. They then went down to the basement to transfer some anhydrous ammonia from the large tank to a smaller, more portable tank. As they were completing this transfer, the police arrived. After taking Rogers' statement, the police returned to 39 Liapple Street. There, they found Lowe huddled on the floor next to the tank of anhydrous ammonia. The police also found evidence of a methamphetamines lab at the Pipe Creek residence and Lowe's home in Bellaire.
 {¶ 11} The Belmont County Grand Jury returned an indictment charging Lowe with three offenses: illegal assembly or possession of chemicals for manufacture of drugs in violation of R.C.2925.041(A); falsification in violation of R.C. 2921.13(A)(3); and, identity fraud in violation of R.C. 2913.49(B)(2). The matter proceeded to a jury trial and, at the conclusion of that trial, the jury found Lowe guilty of illegal assembly or possession of chemicals for manufacture of drugs, but not guilty of falsification and identity fraud. After a sentencing hearing, the trial court sentenced Lowe to four years imprisonment.
 Ineffective Assistance of Counsel {¶ 12} In his third of four assignments of error, Lowe argues:
 {¶ 13} "Defendant was denied effective assistance of counsel."
 {¶ 14} In this assignment of error, Lowe contends that his trial counsel was ineffective for failing to object to the introduction of certain testimony. Lowe argues that this testimony was inadmissible hearsay and that he was prejudiced by this evidence. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. State v. Smith (1985), 17 Ohio St.3d 98. In order for a court to conclude counsel was ineffective, the defendant must overcome the presumption that, under the circumstances, the allegedly ineffective action might be considered sound trial strategy. Strickland at 698.
 {¶ 15} Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. Statev. Hamblin (1988), 37 Ohio St.3d 153. The defendant must demonstrate more than vague speculations of prejudice to show counsel was ineffective. State v. Otte, 74 Ohio St.3d 555, 565, 1996-Ohio-0108. To establish prejudice, a defendant must show there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different.Strickland at 694. A reasonable possibility must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. Smith.
 {¶ 16} In this case, Lowe cannot demonstrate that his counsel's performance was deficient. He argues that counsel should have objected to certain testimony of both the arresting officer, Patrolman Walton, and Rogers. But the statements within these witnesses' testimony were not hearsay.
 {¶ 17} Lowe claims that Patrolman Walton gave hearsay testimony when relating what Rogers told him after the arrest, but the evidence clearly established that Rogers was Lowe's co-consiprator in the manufacture of methamphetamines. A statement by a co-consiprator is not hearsay if there is independent proof of the conspiracy. Evid.R. 801(D)(2)(e). Rogers own testimony provided that independent proof. Thus, the statements within Patrolman Walton's testimony were not hearsay.
 {¶ 18} Likewise, Lowe also argues that portions of Rogers' testimony were inadmissible hearsay. The testimony Lowe complains of is as follows: "I asked them where did they get [the anhydrous ammonia tank] from and they said — my dad and [Lowe] told me while they were sitting there that they went to Coronet Foods and had taken it." Rogers went on to clarify that Lowe personally told him that he stole the tank from Coronet Foods and how they stole it. Evid.R. 801(D)(2)(a) provides that a purported statement by a party-opponent offered against that party-opponent is not hearsay. In this case, the statements that Rogers testified to were made by Lowe. Therefore, they were also not hearsay by definition.
 {¶ 19} Lowe claims that these witnesses gave hearsay evidence, but their testimony was not hearsay by definition. Counsel could not be ineffective for failing to object to probative, non-hearsay testimony. Lowe's third assignment of error is meritless.
 Mistrial {¶ 20} In his second assignment of error, Lowe argues:
 {¶ 21} "The trial court erred in not granting defense counsel's motion for a mistrial at the close of opening argument and during testimony."
 {¶ 22} Here, Lowe claims the trial court erred by not granting his motion for a mistrial since there were numerous references to a methamphetamine lab that Lowe allegedly ran at an earlier time in Pultney Township. According to Lowe, the charges in his indictment only relate to crimes occurring in Pease Township, and he was unprepared to defend against this unrelated, prejudicial evidence.
 {¶ 23} The State argues that all the evidence introduced in this case was discovered in Belmont County and that the evidence of the other chemicals demonstrates Lowe's intent. Thus, it believes this evidence was properly introduced and that the trial court properly denied the motion for a mistrial.
 {¶ 24} Whenever an appellate court is reviewing a trial court's decision granting or denying a defendant's motion for a mistrial, it must remember that the trial court has the discretion to determine whether "a reference in the testimony to a forbidden subject merits the extreme remedy of a mistrial."State v. Jones (1992), 83 Ohio App.3d 723, 737. The trial court is in the best position to make this judgment, so appellate courts must give its decision great deference and only reverse that decision if it has abused its discretion. State v. Glover
(1988), 35 Ohio St.3d 18, 19; State v. Agner,135 Ohio App.3d 286, 295, 1999-Ohio-0918. An "abuse of discretion" is more than an error of law or of judgment; rather, it implies the trial court's decision is unreasonable, arbitrary or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 25} When reviewing the trial court's decision, we must use a balancing test, weighing the defendant's right to have the charges decided by a particular tribunal against society's interest in the efficient dispatch of justice. Glover at 19. "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected."State v. Reynolds (1988), 49 Ohio App.3d 27, 33. If an error or irregularity does not adversely affect a defendant's substantial rights, then those rights must "`be subordinated to the public's interest in fair trials designed to end in just judgments.'"Glover at 19, quoting Wade v. Hunter (1949), 336 U.S. 684,689. As the Ohio Supreme Court has cautioned, trial courts should only grant mistrials "when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991),62 Ohio St.3d 118, 127. "Where the facts of the case do not reflect unfairness to the accused, the public interest in insuring that justice is served may take precedence." Glover at 19.
 {¶ 26} Thus, our inquiry is twofold. First, we must determine whether there was an error or irregularity in the trial proceedings. If there was, we must next determine whether that error or irregularity adversely affected Lowe's substantial rights to such a degree that a fair trial was no longer possible.
 {¶ 27} Essentially, Lowe's argument is that the trial court abused its discretion since the facts the State referred to and relied upon were evidence of bad acts which were not referred to in the indictment. But while evidence of a person's bad acts are "not admissible to prove the character of a person in order to show that he acted in conformity therewith," this evidence is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). This rule of evidence is in accord with R.C. 2945.59, which allows this kind of evidence to come in for particular purposes in a criminal case.
 {¶ 28} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." Id.
 {¶ 29} In this case, the State had to prove that Lowe "knowingly assemble[d] or possess[ed] one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." R.C. 2925.041(A). The chemicals in his possession at the time of his arrest was the tank of anhydrous ammonia. The evidence to which he objects is evidence proving that he possessed this chemical "with the intent to manufacture a controlled substance." Since this evidence was offered to prove intent, it is admissible under Evid.R. 404(B) and R.C. 2945.59.
 {¶ 30} Lowe claims the trial court should have granted a mistrial since the prosecutor improperly referred to and introduced prejudicial evidence. But the evidence he refers to is proper, admissible evidence in this case. Thus, the trial court did not abuse its discretion when denying Lowe's motion for a mistrial. Lowe's arguments to the contrary are meritless.
 Manifest Weight {¶ 31} In his first assignment of error, Lowe argues:
 {¶ 32} "Defendant was found guilty against the manifest weight of the evidence."
 {¶ 33} Lowe claims that the State failed to prove that Lowe exercised control over any of the chemicals in Pease Township. In particular, he points to the fact that the State could not prove he was present at the time of the initial raid or that he ever possessed the chemicals in the car.
 {¶ 34} When reviewing whether a conviction was against the manifest weight of the evidence, we must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" Statev. Tibbetts, 92 Ohio St.3d 146, 163, 2001-Ohio-0132, quotingState v. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-0533. In order to do this, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis sic.) State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-0052, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 35} "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. at 387, 485, quotingState v. Martin (1983) 20 Ohio App.3d 172, 175. "To reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus.
 {¶ 36} As stated above, in order to convict Lowe of illegal assembly or possession of chemicals for manufacture of drugs, the State had to prove that Lowe "knowingly assemble[d] or possess[ed] one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." R.C.2925.041(A). The Revised Code defines many of the terms used in R.C. 2925.041(A).
 {¶ 37} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Possess" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). A person "manufactures" a drug by:
 {¶ 38} "planting, cultivating, harvesting, processing, making, preparing, or otherwise engaging in any part of the production of a drug by propagating, compounding, converting, or processing, either directly or indirectly by extracting from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes the following:
 {¶ 39} "(i) Any packaging or repackaging of the drug or labeling or relabeling of its container, the promotion and marketing of the drug, and other activities incident to production;
 {¶ 40} "(ii) The preparation and promotion of commercially available products from bulk compounds for resale by pharmacies, licensed health professionals authorized to prescribe drugs, or other persons." R.C. 3715.01(A)(14)(a).
 {¶ 41} Finally, methamphetamines are schedule II drugs. R.C.3719.41, Schedule II(C)(2).
 {¶ 42} In this case, the jury did not lose its way since the evidence supports Lowe's conviction. Patrolman Walton testified that an anonymous informant called the Bridgeport Police Department in the early morning hours of March 4, 2004, to tell the police that some people were using and possibly producing methamphetamines at 39 Laipple Street in Bridgeport, Ohio. The informant specifically suggested that the police check the trunk of a blue car parked in front of that home. Patrolman Walton drove to the home, saw the blue car, and got out of his cruiser. As he approached the home, he saw a man run upstairs from the basement. He told his partner to secure the rear of the house and approached the front door. When he got to the door, the man who ran up from the basement opened it, saw the officer, slammed the door shut, and locked it. This man was later identified as Rogers.
 {¶ 43} Soon afterward, three women opened the door for Patrolman Walton. They told him they did not know the man and that he was "busting through" the home." Patrolman Walton's partner then found Rogers in the bathroom, where he was arrested. When Patrolman Walton returned to the living room, one of the women had left. The two girls then admitted that some objects in the living room were drug paraphernalia and brought him other drug paraphernalia from around the home. One of these two girls was Lowe's girlfriend. As she was being arrested, she admitted that she knew Rogers and that he had sold her some methamphetamines earlier that night. Patrolman Wallace also testified that he smelled a strong chemical odor coming from the blue car.
 {¶ 44} Patrolman Walton interviewed Rogers after he was arrested. Initially, Rogers falsely identified himself, but after he was fingerprinted he admitted he was Rogers. Rogers said Lowe was with him when he arrived at 39 Laipple Street, but that he did not know where Lowe was at the time of the raid. According to Rogers' statement, he and Lowe were at the house to obtain anhydrous ammonia from a large blue tank in the basement so they could manufacture methamphetamines. Lowe told Rogers that he and Rogers' father had stolen the tank from Coronet Foods, a business where both Lowe and Rogers worked. Rogers also told Patrolman Walton that the tank had been at 39 Liapple Street for one or two weeks. According to Rogers' statement, they had been manufacturing methamphetamines at Lowe's home in Bellaire, but the lab was being moved to a new location on Pipe Creek Street.
 {¶ 45} After Rogers gave his statement, Patrolman Walton interviewed the woman who lived at 39 Liapple Street. She admitted knowing that the tank of anhydrous ammonia was in her basement, but stated she did not know what that tank was used for. Patrolman Walton then obtained a search warrant for the house and car at 29 Liapple Street. When they entered the basement, they found Lowe cowering behind a large blue tank labeled "anhydrous ammonia." Patrolman Walton testified that he did not know from his own personal knowledge whether Lowe was in the home during the initial raid.
 {¶ 46} Deputy Todd Marcino testified that on the morning of March 4, 2004, he was informed of a possible methamphetamines lab on Pipe Creek outside of Bellaire. When he reached that home, the homeowner allowed him to search the home. He testified that he found components of a methamphetamines lab at the home. The homeowner told him that these components all came from Lowe's home in Bellaire and that Lowe had been at the house the night before, but had left at about 10:00. At about the same time of the raid at 39 Liapple Street, the people visiting her at Pipe Creek received a phone call. They got excited and ran out.
 {¶ 47} Rogers also testified for the State. His testimony was consistent with his statement to Patrolman Walton. He admitted that he was testifying pursuant to a plea agreement. When he was originally arrested, he gave the police a false name because he had violated Florida probation and there was an outstanding warrant for his arrest as a result. According to Rogers, he and Lowe first got into the business of manufacturing methamphetamines about four weeks before they were arrested. Apparently, Rogers' father knew how to manufacture that drug. He escaped from prison and Lowe had agreed that he could hide out at his home. When Rogers first went over to Lowe's to visit his father, he saw an entire methamphetamine lab. As a part of that lab, Rogers saw the tank of anhydrous ammonia. Lowe and Rogers' father told Rogers that they stole it from Coronet Foods, where Rogers and Lowe had both worked. Rogers said that he saw them manufacturing methamphetamines every time he visited Lowe's home after this.
 {¶ 48} After the lab had been set up for two weeks, Lowe wanted to move the tank to a different location, so he, Rogers, and Rogers' father all moved the tank to 39 Liapple Street. The woman living there let them keep the tank in her basement in exchange for free methamphetamines. The tank had been at her house for two weeks prior to the arrest. After it was moved, Lowe and Rogers would bleed anhydrous ammonia from the large tank into a smaller propane tank to cook the methamphetamines. Rogers explained that anhydrous ammonia was essential to the manufacture of methamphetamines.
 {¶ 49} On March 3, 2004, Lowe was getting into an argument with an ex-boyfriend of his girlfriend. That person threatened to inform the police about the methamphetamines lab in Lowe's home, so they decided to move the rest of the lab to the Pipe Creek home. Lowe, Rogers, and Rogers' father all put the chemicals in the blue car which was eventually parked in front of 39 Liapple Street. After they moved most of the lab to the Pipe Creek location, Rogers and Lowe drove over to 39 Liapple Street to obtain some anhydrous ammonia. When they arrived there, they smoked methamphetamines. The ex-boyfriend kept calling Lowe's girlfriend, so Lowe and Rogers eventually went down to the basement to get the anhydrous ammonia. While they were down there, a police cruiser pulled up. Lowe told Rogers to hide rather than run, but Rogers ran anyway. Rogers never saw Lowe again that night.
 {¶ 50} Robert Wallace, chief of the Bellaire Police Department, testified next. He testified that he obtained a warrant to search Lowe's home in Bellaire. While executing the search, he testified that he found components necessary to manufacture methamphetamines at Lowe's home.
 {¶ 51} The final witness was Scott Duff, a special agent supervisor for the BCI and an expert in methamphetamine labs. He testified that methamphetamines are a schedule II stimulant, which means that they are illegal to have without a prescription. He clarified that it is always illegal to possess homemade methamphetamines. Special Agent Duff explained that methamphetamines are a stimulant that one can make using anhydrous ammonia and other chemicals. Most of the other chemicals which Special Agent Duff mentions were found either at Lowe's Bellaire home or at the Pipe Creek location.
 {¶ 52} On March 4, 2004, Special Agent Duff was called to 39 Liapple Street to investigate a reported methamphetamines lab. He first checked the blue tank in the basement and ascertained that it was a tank of anhydrous ammonia. While checking the tank, he found Lowe "hunkered down" next to the tank and had him arrested. He then called a hazardous waste company to dispose of the anhydrous ammonia tank, since anhydrous ammonia was a dangerous chemical. Afterward, Special Agent Duff searched the blue car parked in front of the house and found a variety of chemicals and instruments used to manufacture methamphetamines.
 {¶ 53} This testimony supports the jury's finding that Lowe was guilty of illegal assembly or possession of chemicals for manufacture of drugs in violation of R.C. 2925.041(A). Lowe possessed, among other things, the anhydrous ammonia in the tank. Anhydrous ammonia is used to produce methamphetamines, a schedule II drug. Rogers' testimony, supported by the evidence seized at Lowe's home and at the Pipe Creek location, prove that Lowe possessed the anhydrous ammonia with the intent to manufacture methamphetamines. The jury did not clearly lose its way when finding Lowe guilty and his first assignment of error is meritless.
 Sentencing {¶ 54} In his final assignment of error, Lowe argues:
 {¶ 55} "The trial court relied on unproven material facts during the sentencing of the defendant."
 {¶ 56} Lowe contends the trial court erred by not reducing his sentence after it found out that some of the evidence it relied upon in Lowe's pre-sentence investigation report was incorrect. In response, the State contends the trial court made all the findings required by statute before imposing sentence and that its findings were supported by the record. While Lowe's description of the facts is correct, it appears that the State's conclusion is the correct one.
 {¶ 57} On appeal, this court may only vacate, increase, reduce, or otherwise modify a sentence if it clearly and convincingly finds either that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2); State v. Sheppard (1997),124 Ohio App.3d 66, 67-68.
 {¶ 58} When sentencing an offender, the trial court must consider several aspects of the sentencing statutes. First, the overriding purposes of felony sentencing must be followed, namely, to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11(A). The court must consider the need for "incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." Id. Further, the sentence must be commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim and be consistent with sentences imposed for similar crimes committed by similar offenders. R.C. 2929.11(B). Keeping these purposes in mind, if the offender has not previously served a prison term, R.C. 2929.14(B) presumes the imposition of the shortest prison term for an offense.
 {¶ 59} Lowe was convicted of a third degree felony. Before a trial court can sentence an offender to a prison term for a fourth or fifth degree felony, it must make the findings required by R.C. 2929.13(B). But a trial court is under no such obligation when sentencing an offender to a third degree felony. State v.Anderson, 146 Ohio App.3d 427, 433, 2001-Ohio-4297. The sentencing guidelines in R.C. 2929.13(C) do not provide a presumption in favor of either a prison sentence or community control for third-degree felonies. State v. Williams, 6th Dist. No. L-02-1394, 2004-Ohio-0466, ¶ 13. When sentencing an offender for a third-degree felony, the choice between a prison term or community control sanctions is left to the discretion of the sentencing judge. Id.
 {¶ 60} The trial court may only impose a sentence beyond the minimum term when it specifically finds on the record that the shortest prison term would either demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender. R.C. 2929.14(B). Since R.C.2929.14(B) requires that the trial court's findings be made "on the record," a trial court is required to make its statutorily enumerated findings at the sentencing hearing. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165. The trial court is not required to give an explanation for its finding. Rather, the trial court "must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." State v. Edmonson, 86 Ohio St.3d 324, 326, 1999-Ohio-0110. When determining the seriousness of the offense and the likelihood of recidivism, the trial court should look to the factors in R.C. 2929.12. A trial court does not need to make any further findings if it sentences an offender to more than the minimum but less than the maximum possible prison term for the offense.
 {¶ 61} In this case, the trial court found that Lowe had served a prior prison term in West Virginia. It also found that community control sanctions "would not adequately punish this offender and protect the public from future crime." It concluded that these findings allowed it "to impose a longer prison term" pursuant to R.C. 2929.14(C). It then sentenced Lowe to four years imprisonment, which is more than the minimum but less than the maximum possible prison sentence for the offense.
 {¶ 62} After the trial court imposed the sentence upon Lowe, Lowe informed the court that he had not actually served a prior prison term. The trial court agreed, recognized that Lowe had not, in fact, served a prior prison term, and specifically amended its findings to reflect that Lowe had previously served a jail term, rather than a prison term. However, after recognizing that Lowe had not previously served a prison term, the trial court never made the findings required by R.C. 2929.14(B).
 {¶ 63} We note that both Ohio and West Virginia recognize that there is a distinct difference between a prison sentence and a jail sentence. Under Ohio law, a "jail term" is the term in a jail, workhouse, minimum security jail, or other residential facility used for the confinement of alleged or convicted offenders that is operated by a political subdivision or a combination of political subdivisions of this state that a sentencing court imposes or is authorized to impose pursuant to R.C. 2929.24 or 2929.25 or pursuant to any other provision of the Revised Code that authorizes a term in a jail for a misdemeanor conviction. R.C. 2929.01(S), (T). In contrast, a "prison term" is the term in a residential facility used for the confinement of convicted felony offenders that is under the control of the department of rehabilitation and correction but does not include a violation sanction center operated under authority of R.C.2967.141 that a sentencing court can impose for a felony offense. R.C. 2929.01(BB), (CC).
 {¶ 64} There is a similar distinction in West Virginia. The West Virginia Code defines a jail as any facility operated by one or more counties for the confinement, custody, supervision or control of adult persons convicted of misdemeanors, awaiting trial or awaiting transportation to a state correctional facility." W.V. Code 31-20-2(k), (o). In contrast, a prison is "any minimum or medium or maximum adult correctional institution operated under the authority of the division or of a political subdivision of this state, whether obtained by purchase, lease, construction, reconstruction, restoration, improvement, alteration, repair, or other means." W.V. Code 25-5-3(h).
 {¶ 65} Clearly, the trial court's recognition that Lowe served a jail sentence, rather than a prison sentence, means that it did not make the finding required by R.C. 2929.14(B). The State seeks to excuse the trial court's factual mistake and subsequent failure to make the findings required by R.C.2929.14(B) by relying on the principle that a trial court speaks through its journal. Its reliance on this principle is misplaced for two reasons. First, it ignores the Ohio Supreme Court's mandate in Comer findings which must be made "on the record" be made at the sentencing hearing. Second, nothing in the judgment entry can be construed to be a finding that the shortest prison term would either demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender.
 {¶ 66} The trial court sentenced Lowe to more than the minimum possible prison term for a third degree felony, but never made the findings required by R.C. 2929.14(B) after it discovered that Lowe had not served a prior prison term. Lowe's argument that the trial court erred when sentencing him is correct.
 Conclusion {¶ 67} Lowe contends his counsel was ineffective for not objecting to certain hearsay testimony. However, it does not appear that the testimony was hearsay, so counsel could not have been ineffective for failing to object to this testimony for that reason. Lowe also argues that the trial court erred by not granting his motion for a mistrial, but the evidence to which Lowe objects was admissible, probative evidence. Lowe claims his conviction was against the manifest weight of the evidence, but the evidence supports the jury's conclusion that he committed each element of the offense and the trial court's judgment with regard to Lowe's conviction is affirmed. Nevertheless the trial court's sentencing decision must be reversed since it did not make the required findings on the record. Accordingly, this cause is remanded for resentencing.
Donofrio, P.J., concurs.
Waite, J., concurs.